UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
                                   )
          Plaintiff,               )
                                   ) Case No.
          vs.                      ) 14–CR–3106–MDH–4
                                   )
                                   )
NELSON OLMEDA,                     )
                                   )
          Defendant.               )


                    SENTENCING
     BEFORE THE HONORABLE M. DOUGLAS HARPOOL
          TUESDAY, JUNE 20, 2017; 9:33 A.M.
              SPRINGFIELD, MISSOURI




APPEARANCES:

FOR THE PLAINTIFF:          MR. RANDALL D. EGGERT
                            UNITED STATES ATTORNEY'S OFFICE
                            901 St. Louis, Ste. 500
                            Springfield, MO  65806


FOR THE DEFENDANT:          MR. DAVID KING BACK
                            ATTORNEY AT LAW
                            1516 E. St. Louis Street
                            Springfield, MO  65802


COURT REPORTER:             MS. JEANNINE RANKIN, RPR, CSR
                            UNITED STATES DISTRICT COURT
                            222 N. Hammons Parkway
                            Springfield, MO  65806




     Proceedings recorded by mechanical stenography;
transcript produced by computer.

2

```
 1                    USA v NELSON OLMEDA

 2                CASE NO. 14-CR-3106-MDH-4

 3                        SENTENCING

 4                       June 20, 2017

 5                    *   *   *   *   *   *

 6            THE COURT:  We are here for the sentencing of Nelson

 7    Olmeda.  Who appears on behalf of the United States?

 8            MR. EGGERT:  Randy Eggert for the United States,

 9    Your Honor.

10            THE COURT:  And on behalf of the defendant?

11            MR. BACK:  David Back.

12            THE COURT:  Mr. Olmeda, my name's Doug Harpool.  I'm

13    a federal district judge.  It is my responsibility this

14    morning to sentence you for the crime you've committed.

15            The law instructs a federal judge to sentence you to

16    a sentence which is sufficient but not greater than necessary

17    to meet the objectives of the U.S. sentencing laws.  So in our

18    hearing the first thing we'll do is we'll consult those laws

19    and make sure the lawyers and I can reach some type of

20    agreement on what those laws are or at least for me to make a

21    ruling as to what those laws are.  The first law we'll look at

22    is the congressional law that creates the crime that you've

23    committed.  The second thing we'll do in look at the U.S.

24    Sentencing Commission.  And the U.S. Sentencing Commission has

25    adopted guidelines and they're used by federal judges all
```

1  across our country. It's a starting place, according to the

2  U.S. Supreme Court, for every sentencing decision. So I'll

3  have to calculate your sentencing guideline and adopt a

4  sentencing guideline for you.

5         When that's done, we'll talk about factors that are

6  described in the law at Title 18, Section 3553(a). Those are

7  factors that can allow this Court to depart or vary from the

8  guideline sentence. There's many, many factors and we'll

9  discuss some of them here in court, others of them I'll

10  consider but won't necessarily emphasize because we think

11  perhaps they have less impact in our final decision in this

12  case.

13        When that's done and the lawyers have had their say,

14  I'll give you an opportunity to say something to me, if you

15  want to. Please understand, you're not under any obligation

16  to say anything. You may remain silent, if you wish. But if

17  you want to say something, I want to give you that opportunity

18  before I make a final decision.

19        I want to assure you that before I've entered the

20  courtroom I have read everything that's been submitted to me.

21  I've seen letters, I've seen photos, I've seen legal analysis

22  and then, of course, the presentence investigation report.

23  But everything that's been submitted, I have read and

24  reviewed. But I've not made a final decision on what your

25  sentence should be. Obviously I have an idea but I won't make

3

1  that final decision until we go through the entire process
 2  that we've talked about.
 3       Do you understand the process we're going to go
 4  through?
 5       THE DEFENDANT:  Yes, sir.
 6       THE COURT:  Now, have you read your presentence
 7  investigation report?
 8       THE DEFENDANT:  Yes, sir.
 9       THE COURT:  Had a chance to discuss it with your
10  lawyer?
11       THE DEFENDANT:  Yes, sir.
12       THE COURT:  All right.  Go ahead and be seated,
13  then, and we'll get started.
14       All right.  Counsel, the crime that the defendant
15  faces today or has been found guilty of in Count 1 is
16  conspiracy to distribute 500 grams or more of a mixture or
17  substance containing a detectible amount of methamphetamine.
18  That is a Class A felony, as I read the law, and it brings
19  with it a sentence of not less than 20 years in prison, a
20  sentence as long as life in prison, a fine of not less than
21  ten years -- excuse me, a fine, supervised release of not less
22  than ten years and as long as life.
23       Any disagreement that that is the applicable
24  punishment to Count 1?
25       MR. EGGERT:  No, Your Honor.

4

1          MR. BACK:  With the 851 motion, we agree that's the
2    range of punishment.

3          THE COURT:  Then on Count 46, possession with intent
4    to distribute 500 grams or more of a mixture or substance
5    containing a detectible amount of methamphetamine, is again a
6    Class A felony and again brings with it not less than 20
7    years' imprisonment, as long as life in prison, a fine —
8    possible fine, supervised release of not less than ten years,
9    as long as life, $100 mandatory special assessment.

10         Any disagreement on that?

11         MR. EGGERT:  No, Your Honor.

12         MR. BACK:  No, Your Honor.

13         THE COURT:  So let's talk about sentencing
14   guidelines.  The presentence report assigns an offense level
15   of 35 and a criminal history category of three to this
16   defendant.

17         For the record, I know that Mr. Back's explained
18   this to you but I like to do it myself as part of the
19   sentencing so others can understand.  In the back of the
20   sentencing guideline book there is a chart.  Under that chart
21   along the top there's criminal history categories.  It goes
22   from one to six, six being the highest.  Then down along the
23   side of the chart there's offense levels and just a number is
24   assigned to the crime based on the circumstances of the crime
25   and the factors involved in the crime.  So in order to find a

1  guideline sentence, we adopt where you fit on the left side of
2  the chart, your offense level, adopt where you fit on the top
3  of the chart, your criminal history category, and then we see
4  where the two meet on the chart and that is your guideline
5  sentence.  So the offense level under the presentence
6  investigation as it was calculated there was a 35 and your
7  criminal history was a three.
8          Now, are there objections that we need to take up
9  and consider with regard to that?
10         MR. EGGERT:  The defendant did raise one objection
11 to the two-point increase in the criminal history category
12 because he was convicted while under an instant offense of the
13 criminal justice system of possession of controlled substance
14 out of Oklahoma.  I did not respond in my sentencing
15 memorandum directly to that because if the Court sustains the
16 objection or if the Court doesn't sustain the objection, the
17 sentencing range would still be 240 months, which is what the
18 government's going to request in this case, at least 240
19 months.
20         THE COURT:  Which is -- your recommendation is what
21 you believe to be the lowest sentence I could give under
22 the --
23         MR. EGGERT:  Exactly, Your Honor.  So if you granted
24 the defendant's motion, it would actually reduce the guideline
25 range to actually below 240 months, which you would be under

6

1  statute obligated to still give the defendant a sentence of
2  240 months.
3           THE COURT:  Mr. Back, your position on -- do you
4  agree with that analysis?
5           MR. BACK:  I do.
6           THE COURT:  Tell me your objection in your own words
7  to the -- I mean, even though it doesn't affect it, I want to
8  hear it out.
9           MR. BACK:  I was gearing for other things, but my
10  objection towards the criminal history was I think the fact
11  that the conspiracy was ongoing and his conviction in Oklahoma
12  was during the pendency of the conspiracy.
13           THE COURT:  That's right.  I remember that issue,
14  yeah.  I'm going to overrule that objection.  I thought there
15  was -- the timing as described by the probation officer in
16  response was appropriate, so I am going to apply that
17  enhancement with the understanding that it makes no difference
18  in the sentence this Court intends to impose.
19           Mr. Eggert -- let me say, the -- given that ruling,
20  the guideline sentence for you under the U.S. Sentencing
21  Guidelines is between 240 months and 262 months.  The 240
22  months I've adopted because that's the minimum sentence the
23  Congress has allowed.  It also would provide for supervised
24  release of 10 years, a fine of between 20,000 and 40 million,
25  then a special assessment of $100 on each count.

7

```
 1            Mr. Eggert, you've already told me what your

 2    recommendation is and I had certainly read what you had

 3    submitted to me.  Do you wish to add anything to that record?

 4            MR. EGGERT:  No, I don't think so, Your Honor.  We

 5    are asking for a sentence of 240 months.  I think that is

 6    proportionate with the other defendants in this case.  It is

 7    also the minimum the Court could order in this case.  The

 8    defendant did not choose to cooperate.  That was, of course,

 9    his choice.  The government gave him the opportunity to do

10    that.  So the sentence is limited by the statutory minimum,

11    which in this case is 240 months.

12            THE COURT:  I don't want to catch you off guard.

13    Tell me about the 851.  What else is there in his background?

14            MR. EGGERT:  I believe, Your Honor, that's the only

15    felony conviction that applies in this case.  We initially

16    charged -- I'll tell you a little bit about the philosophy

17    about why we charged the defendant the way that we did.

18            It was our belief that the -- it still is our belief

19    the defendant was a primary mover of the methamphetamine that

20    was part of this particular conspiracy, so it was our hope in

21    the charging of the 851 to reflect his great role in the

22    conspiracy and also use that as a leverage to help the

23    defendant decide to cooperate in this case but he chose not to

24    in this case.  I still think the sentence is fair because I

25    think this particular defendant with his prior felony
```

conviction for drug distribution was not a novice to this
process. He was a distributor of methamphetamine, a large
amount of methamphetamine, and was responsible for supplying
part of that methamphetamine to this particular conspiracy.

Thank you.

THE COURT: Mr. Back, you wish to be heard?

MR. BACK: Yes, Judge.

I guess there's really two areas that I want to
concentrate on and one is his prior conviction. It was not
for distribution. It wasn't even for possession with intent.
It wasn't even for methamphetamines. It was for marijuana.

One of the reasons that we have kind of I don't want
to say dragged our feet but grappled with in getting here
three years later is the fact that this prior conviction -- at
one point in time while the case was pending Mr. Olmeda was
offered a misdemeanor on that. It was possession of
marijuana. It would have been a misdemeanor with a
conviction. He chose a route that would try to get the
conviction not on his record. He was revoked for not paying
probation and fines. But, again, it wasn't for
methamphetamines, it wasn't even for distribution, it wasn't
for possession with intent. It was simple possession albeit
4 ounces. And, again, that felony and his two misdemeanors
all deal with marijuana.

When I first got this case, started getting this, I

9

saw references to Mr. Olmeda being from Texas and I was
thinking to myself, Oh, here's a guy that was sent up to
Missouri to help move methamphetamines.  Well, that's not the
case.  He had family living here.  He came here for work.  He
didn't try methamphetamine until he got to Missouri.  He
didn't start distributing methamphetamine until he had a
relationship with one of the co-conspirators, Melody
Carpenter.  That was a photograph that we sent to the Court
just to show that they, in fact, were boyfriend/girlfriend for
a period of time, they both were users of meth for a period of
time.  It was Melody Carpenter who had set the wheels in
motion for Mr. Friend -- Mr. Olmeda to distribute.

So the first arena and argument to the Court is we
just didn't think that his prior felony certainly was not a
serious drug offense and we argue that it possibly shouldn't
have been applied to Mr. Olmeda unless he had chosen to go to
trial.

Second, as I've kind of already alluded to, his
involvement in this conspiracy began as an addict and
continued as an addict and I guess it was the connections that
Mr. Olmeda had in Texas that allowed him to distribute to
Mr. Friend.  As I understand it, there was really only one
time Mr. Olmeda and Mr. Friend actually engaged in
distribution that Mr. Olmeda distributed to Mr. Friend.

The other, I guess, argument would be is that some

10

1   co-defendants received less than 240 and they had guns in
2   their possession.  Mr. Olmeda never had guns, never was
3   involved with guns.  And so we just present a man who was an
4   addict at the time and became involved because of the
5   girlfriend.

6          I will point out, Judge, that in three years of
7   detention at Greene County Jail, Mr. Olmeda has only had one
8   violation.  In the three years he's been there, at one point
9   he had a bout of palsy because he was stressing out over the
10  case and it reflected in some grouping of muscles.  As he has
11  evidenced in his allocution statement, he recognizes the
12  seriousness of this and has changed his life.  His being sober
13  for 30 months has really impacted him.  He's thinking clearer,
14  and that's something that addicts don't do.

15         So we just present a man who is, we think, a
16  mid-level distributor.  We don't think he had been involved --
17  well, doesn't have the same serious priors that some of these
18  other co-defendants have and would ask the Court to sentence
19  him to the minimum in this case.

20         THE COURT:  Let me -- I noticed in your briefing you
21  requested credit for the time he's been in jail.  Has he been
22  held under the federal charges the whole time?

23         MR. BACK:  He has.

24         THE COURT:  So I don't think there will be an issue.
25  I think that will be good.

Case 6:14-cr-03106-MDH   Document 1056   Filed 09/22/17   Page 11 of 22

| | |
|---|---|
| 1 | Does he want to go down to Texas? |
| 2 | MR. BACK:  He does, the Bastrop facility. |
| 3 | I want to go back.  I think I do have a request of |
| 4 | 959 days that he be credited for his confinement, so I do that |
| 5 | at this time, and request the Bastrop facility as well as the |
| 6 | RDAP and UNICOR programs. |
| 7 | THE COURT:  Certainly I doubt you have any objection |
| 8 | to him getting credit.  Do we know if the 959 is correct? |
| 9 | MR. EGGERT:  I do not know the answer to that.  I |
| 10 | think the probation office would have a better understanding |
| 11 | of that time.  Whatever time is calculated by the BOP, the |
| 12 | marshals and the probation office, I concur he should get |
| 13 | credit for the time he has served in custody awaiting |
| 14 | sentencing. |
| 15 | THE COURT:  All right. |
| 16 | Mr. Back, does your client wish to address the |
| 17 | Court? |
| 18 | MR. BACK:  He does. |
| 19 | THE COURT:  He may do so at this time. |
| 20 | THE DEFENDANT:  With all respect, Judge, I want to |
| 21 | begin by saying I'm very remorseful for my wrongdoings. |
| 22 | There's no explanation to justify why I violated the law so I |
| 23 | stand before you to accept accountability for what I did.  I |
| 24 | would also want to acknowledge Assistant United States |
| 25 | Attorney Randy Eggert for the effort he's had in this case |

12

```
 1   and I have to agree in some measure what he has stated about
 2   me.  There's no denying the crimes I committed.  But I've been
 3   in the Greene County Jail for the last 30 months and I've seen
 4   the way drugs affects people, particularly the ones I was
 5   involved with, and it's sad to know that at one point I was
 6   responsible for having individuals live a life that way,
 7   including myself.
 8            Now that I see my family here for the first time in
 9   three years, I realize now what I've really lost.  Being
10   involved with meth, it's taken everything from me and I
11   despise it for that.  I want to apologize to the city of
12   Springfield, the state of Missouri for the harm and damage
13   I've caused to the community.  I want everyone here to know
14   that's not who I am.  I'm not proud of myself for the
15   decisions I've made.  I'm ashamed and embarrassed to be a part
16   of something like this.  If I could correct my decisions, I
17   would.  All I can do is be held liable for my actions and
18   learn from them and be a better person.  All I ask, Judge, is
19   for you to acknowledge that this whole situation has
20   transformed me to a -- as a person and has made me understand
21   the seriousness of the laws I broke.
22            Last but not least, I want to thank my attorney,
23   David Back, for the good job he's done being my lawyer.  It's
24   been a long road and he's been right here with me.  Most of
25   all I want to thank him for being honest with me even if it
```

13

didn't favor him in his favor.  He was honest with me the
whole time and I respect him for that a lot.

THE COURT:  Any reason why I shouldn't impose
sentence at this time?

MR. EGGERT:  No, Your Honor.

MR. BACK:  No, Your Honor.

THE COURT:  All right.  Mr. Olmeda, what happens now
is I will announce my sentence but I do want to give you a
little explanation.  You've acknowledged some of what I plan
to say but I do want to for the record say.

Methamphetamine did a lot of damage and does a lot
of damage to our community and to the people in the community,
to the extent that's why the laws are so tough.  And I
recognize these are -- minimum 20-year sentence is a very
tough sentence and I understand that.  This wasn't just a
little conspiracy you were involved in, this was a big one.
There's lots of methamphetamine going through and lots of
cash.  And by misfortune Ms. Carpenter was a leader in this
organization, was at the very forefront -- one of the leaders
in the organization.  Your knowledge of the quantity of drugs
clearly places you under the law as being responsible under
the conspiracy laws and you've seen some people in prison that
have been affected by methamphetamine.  There's a whole lot of
others out there who you didn't see.  Those include people who
haven't been caught yet.  It includes you, what it did to your

14

1  life.  It includes your family and the families of those you
2  saw, because all of them have suffered because of what
3  methamphetamine does to the community.

4       I'm glad you're clean, as you represented, and the
5  most important thing for you when you get out of prison is to
6  stay clean.  You live your life, don't let methamphetamines
7  live it for you.

8       It is appropriate for you to receive a sentence
9  under the law because methamphetamine distribution requires
10 punishment and we must deter others who would be inclined to
11 do likewise.

12       I agree with your lawyer, in terms of your personal
13 background, this is a fairly significant step in criminality
14 toward what you've been involved in in the past but it's a
15 step you took and it's a step that you'll pay for.

16       As for relative sentences, when you have 29
17 defendants in a conspiracy, one of the challenges the Court
18 has is to try to make everybody's sentences fall according to
19 their culpability and I actually would commend the U.S.
20 Attorney, I think they've worked hard in this case to try to
21 do that.  Minds can sometimes disagree but I think he always
22 had a reasonable rationalization as to where he tried to fit
23 people in.

24       The decision not to cooperate is not mine, it was
25 yours, but your sentence is different as a result and that may

15

1    be a decision you wish you could take back but you can't.

2              There are a couple -- at least one that I -- in

3    reviewing the list of what I sentenced other people to in this

4    situation who I think you could argue he got a little lighter

5    sentence than you're getting based on culpability, but every

6    case is unique and everybody's background is unique.  I think

7    there were some who I've yet to sentence who will claim you

8    should have gotten a higher sentence.  So I think we tried to

9    be fair in where you fit in.  Frankly, given the legal

10   position in which you presently find yourself, I'm going to

11   give you the lowest sentence allowed by the Congress.  And if

12   people think those sentences are too high, the solution has to

13   be found in Congress, not in this court.

14             So pursuant to the Sentencing Reform Act of 1984,

15   it's the judgment of this Court that defendant Nelson Olmeda

16   is hereby committed to the custody of the Bureau of Prisons

17   for 240 months on Counts 1 and 46 to be served concurrently.

18   Upon release from imprisonment the defendant will be placed on

19   supervised release for ten years.  This consists of 10 years

20   on each Counts 1 and 46.  Again, the terms will run

21   concurrently.  I'm not going to impose any fine.  I don't

22   think you have the ability to pay a fine.  You will have to

23   pay the mandatory special assessment of $100 on each Count 1

24   and 46 for a total of $200 which is due immediately.

25             A motion for preliminary forfeiture was filed this

                                  16

morning.  Does the defendant have any objection to the
forfeiture provisions?

       MR. BACK:  No, Your Honor.

       THE COURT:  Well, then I -- I will enter a
preliminary order of forfeiture as part of this order, then
finalize that order so the forfeiture order will be finalized.

       You're going to be put on supervised release when
you get out.  I'm going to order you to comply with the
mandatory and standard conditions adopted by the Court.  In
addition, you'll have to comply with the special conditions
listed in Part D, Paragraphs 92 A to D of the presentence
investigation report.

       Now, I want you to understand that when you get out,
there's going to be conditions and it may include random
testing of you to make sure you're not getting back on meth,
it's going to limit who you can associate with, certain
requirements you're going to have to follow.  If you fail to
follow those rules that I've just established, you can be put
back in prison just for failing to follow those rules.  You
understand that?

       THE DEFENDANT:  Yes, sir.

       THE COURT:  I have every reason to believe from what
you've said and the attitude you're presenting that you're not
going to have that problem but I feel like it's my
responsibility to warn you and to caution you.

1          Now, I am going to recommend that you be designated
2    to an institution for participation in the 500-hour
3    residential substance abuse treatment program and also the
4    UNICOR job training program.  And I hope the Bureau of
5    Prisons -- I suggest the Bureau of Prisons recommend placement
6    at FCI Bastrop Prison in Bastrop, Texas.
7          The Court believes that you should receive credit
8    for every day that you have been in prison as a result of your
9    arrest on those charges and recognize that the defendant's
10   calculation as of this date is 959 days.  I've not made that
11   calculation precisely but it is my intent that you be credited
12   for every day that you have been in prison as a result of your
13   arrest associated with this.
14          I reach my sentence because it's the minimum
15   sentence.  I think, frankly, but for the minimum sentence I
16   might have sentenced you a little bit less but not a lot to
17   fit you in the slots.  You were just aware of a huge quantity
18   of methamphetamine coming into our community and knew what was
19   going on and maybe you let your relationship with
20   Ms. Carpenter replace your better judgment and your better
21   sense of what's right and wrong.  Regardless of why you did
22   it, you did it and therefore a sentence is appropriate and
23   I've given you the minimum sentence.
24          Does the government have a count to dismiss?
25          MR. EGGERT:  Your Honor, in this particular case the

defendant was mentioned in Count 66 but it was never the

government's intention to charge him in Count 66, but

reviewing the docket entry sheet of this case it appears that

the docket entry indicates he's charged in Count 66.  So for

sake of the record, to make clear it, we are moving to dismiss

Count 66 as to this defendant only but understanding it was

not our intention to charge him in Count 66.  He was mentioned

with Mr. Friend.  Mr. Friend was the actual defendant we

intended to charge in Count 66.  Mr. Friend was laundering

proceeds and he was using Mr. Olmeda, but for purposes of our

case, we didn't charge Mr. Olmeda but we are moving just for

the record to make sure that that count is dismissed against

him.

        THE COURT:  Is that in the second superseding

indictment?

        MR. EGGERT:  It is, Your Honor, second superseding

indictment.

        THE COURT:  Are there any previous --

        MR. EGGERT:  Yes.  We would move at this time to

also dismiss all counts against the defendant in any previous

indictments that existed in this case.

        THE COURT:  So the only ones he's going to be --

government's going to pursue and not dismiss would be the two

counts in which he's just been sentenced?

        MR. EGGERT:  That's right, Your Honor.

```
 1              THE COURT:  All right.

 2              Now, you do have a right to appeal the sentence that

 3    I have imposed on you.  If you want to appeal, you need to do

 4    so within 14 days.  To the extent that you've preserved your

 5    right to appeal, then those issues sometimes have to be raised

 6    within a time period and the safest is to do it within that

 7    14-day period if that's what you wish to do.  You can talk to

 8    your lawyer more about your appeal rights if you want to.

 9              Is there anything further this Court needs to

10    address?

11              MR. EGGERT:  I don't believe so.

12              THE COURT:  Mr. Back, anything further?

13              MR. BACK:  No, Your Honor.

14              THE COURT:  Mr. Olmeda, the best thing you can do at

15    this point is make what you can out of the time in prison,

16    improve your job skills, improve your ability to cope with

17    substance abuse, because even though you haven't had

18    methamphetamine before, you've had some illegal substances

19    prior.  You need to learn how to deal and cope and live life

20    without them.  And then your job training, of course, will

21    give you skills to earn a living.  All right?

22              THE DEFENDANT:  Yes, sir.

23              THE COURT:  Then you'll go back to the custody of

24    the marshals and then the Bureau of Prisons will make a

25    placement of you in the next few weeks.  Okay?
```

1          THE DEFENDANT:  Okay.

2          THE COURT:  We'll be in recess.

3          (Court stands in recess at 10:01 a.m.)

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2          I, Jeannine M. Rankin, Federal Official Court Reporter,

 3    in and for the United States District Court for the Western

 4    District of Missouri, Southern Division, do hereby certify

 5    that the foregoing is a true and correct transcript of the

 6    stenographically reported proceedings.

 7

 8

 9

10

11                         /s/ Jeannine M. Rankin

12    Date:      09/14/17      Jeannine M. Rankin, CCR, CSR, RPR

13

14

15

16

17

18

19

20

21

22

23

24

25
```